NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KHALEELAH P. CRAWFORD, | : | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | : | Civil Case No. 13-5500 |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | March 5, 2015 |
| Defendant. | : | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff's application to review a final decision of the Commissioner of the Social Security Administration pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The application has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**I.    BACKGROUND**

Plaintiff Khaleelah Crawford filed an application for supplemental security income on September 1, 2008 based upon a learning disability, and borderline intellectual functioning.

    **a.  Vocational History**

The Plaintiff completed special education courses at East Orange High School. During 11th and 12th grade her behavior and performance were found to be acceptable and respectful, and she was even able to volunteer in the main office. The Plaintiff was employed as a homemaker, cashier, and sales attendant, some of which is considered semi-skilled work. The Plaintiff has

reported that she is able to perform household chores such as cleaning, laundry, ironing, and cooking. She has also stated that she is able to shop for food and clothing, pay bills, count change, and use her checkbook. Additionally, the Plaintiff has been taking care of her 11-year old daughter without any child support from her daughter's father.

### b. Medical History

On June 26, 2009, the New Jersey Family Practice Center assessed the Plaintiff as a healthy female. Her judgment, insight, and memory were found to be intact, and she was found to be alert and aware. On November 22, 2009, the state agency psychometric services consultant, Dr. Fulford interviewed Plaintiff, and found that the Plaintiff had a verbal IQ of 67, performance IQ of 65 and a full scale IQ of 64, which placed her in the mild range of mental retardation. The review also found that the Plaintiff was cooperative, and her concentration and abstract thinking were described as "good." Although the examination demonstrated some limitations, it was not to the degree described by the Plaintiff or her treating physician. On March 7, 2011, Dr. Frank Ostella diagnosed the Plaintiff with dissociative identity disorder and moderate depression based on the Plaintiff's imaginary friends, voices in her head, sleeping difficulties, and reported suicidal ideation. However, Dr. Ostella's assessment of the Plaintiff was inconsistent with his notes throughout the treatment of the Plaintiff. His treating notes indicated that the Plaintiff's memory, concentration, and orientation are intact, and her insight and judgment are fair. On June 29, 2011, the New Jersey Family Health Center evaluated the Plaintiff for obsessive-compulsive disorder, tobacco use, and major recurrent depression. The result showed no significant change in her medical condition to warrant the diagnosis.

## II.     THE DISABILITY STANDARD

Under the Social Security Act, an individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be found disabled "only if his physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner applies the following five-step sequential analysis to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a), 416.920. If at any step a decision can be made as to whether an individual is disabled, the analysis is complete and does not proceed to the remaining steps. Id.

Step One: Substantial and Gainful Activity. The Commissioner must first determine whether the claimant is presently employed, and whether that employment constitutes substantial gainful activity. 20 C.F.R. § 416.972. Substantial activity is work "that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). Gainful activity is any work "that you do for pay or profit." 20 C.F.R. § 416.972(b). If the Commissioner concludes that an individual is substantially and gainfully employed then that person cannot be disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b).

<u>Step Two: Severe Impairment</u>. If the individual is not engaged in any substantial gainful activity, she must then demonstrate that she suffers from a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it, "significantly limits [the individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe or there is no combination of impairments constituted as severe, than the Plaintiff will not be considered disabled.

<u>Step Three: Listed Impairment</u>. If the Plaintiff demonstrates the existence of a severe impairment, the Commissioner then determines whether that impairment meets or equals a listed impairment in Appendix 1 of 20 C.F.R. § 404, Subpt. P. 20 C.F.R. § 416.920(d). If the impairment meets or is equal to one of the listed impairments, then the Plaintiff is disabled. Id.

<u>Step Four: Residual Functional Capacity</u>. If the severe impairment does not meet or equal one of the impairments listed in Appendix 1, then the Commissioner must consider whether, despite the claimant's impairment, the claimant still possesses the residual functioning capacity to perform her past relevant work. 20 C.F.R. § 416.920(e). If the Plaintiff has the residual functioning capacity to perform past work, she will not be considered disabled.

<u>Step Five: Other Work</u>. Finally, if the Plaintiff is unable to perform past relevant work, the Commissioner considers the individual's residual functioning capacity, age, education, and work experience to determine whether she can adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). The work must exist in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(1). If the individual is unable to adjust to other work, she will be considered disabled. If the Commissioner finds that claimant can adjust to other work, however, then she will not be disabled.

The five step sequential analysis involves a shifting burden of proof. Wallace v. Sec'y of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The Plaintiff bears the burden of proof for steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to prove that the individual is able to perform other work. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

### III. STANDARD OF REVIEW

This Court must review the Administrative Law Judge's ("ALJ") factual findings to determine whether the administrative record contains substantial evidence for such findings. 42 U.S.C.A. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986). "The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it." Snee v. Sec'y of Health and Human Servs., 660 F. Supp. 736, 739 (D.N.J. 1987) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)).

### IV. THE ALJ'S DECISION

Administrative law judge Donna A. Krappa applied the five-step analysis in determining whether Plaintiff was disabled. Under the first step, the ALJ found the Plaintiff has not engaged in any substantial or gainful activity since August 20, 2009. In regards to the second step, the

ALJ found that the Plaintiff does have severe impairments.  She determined that Plaintiff has a learning disability and borderline intellectual functioning and that therefore, under the Regulations these impairments are considered severe because "the medical record supports a finding that they are medically determinable impairments which when considered either individually or in unison significantly limit the claimant's mental and physical abilities to do one or more basic work activities."  20 C.F.R § 416.920(c).

However, at step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of the impairments listed in 20 CFR § 416.920(d), 416.925, 416.926.  In order to qualify for disability under the impairment of mental retardation four requirements must be satisfied.  Under paragraph A there needs to be a dependence on others for personal needs.  Plaintiff does not meet this requirement because she does not depend on anyone for personal needs, and is even able to take care of her 11-year old daughter.  The Plaintiff also does not meet the requirement of paragraph B because she does not have a IQ score of 59 or less.  Additionally, in order to qualify for disability under Paragraph C it requires the Plaintiff have a valid IQ of 60 through 70.  Although the Plaintiff meets this condition because she has a valid IQ score of 64, the requirement is still not met because the Plaintiff's impairment does not impose a significant work related limitation.  Finally, the requirements in paragraph D are not met because although the Plaintiff has a valid IQ between 60 and 70, she does not meet the second part of the requirement.  For the second part of paragraph D there needs to be at least two of the following: there is a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  "A marked limitation means more than moderate

6

but less than extreme." The ALJ found that the Plaintiff did not meet these requirements because under daily living and social functioning the Plaintiff is mildly restricted, in regards to concentration, persistence, and pace the Plaintiff is moderately restricted, and there is no record that the Plaintiff has experienced episodes of decompensation. The ALJ therefore determined that the factors of step three are not met.

The ALJ found that the requirements of step four were also not met because she determined that Plaintiff has the residual functioning capacity to perform exertional demands at work. In regards to the mental demands of work, the ALJ determined that Plaintiff is limited to jobs that are unskilled and repetitive; low stress; require no work in close proximity to others to avoid distraction; and require only occasional contact with supervisors and co-workers but no contact with the general public. In 2009, it was found that Plaintiff was able to provide shelter for herself and her daughter, take care of all her personal needs, cook, perform housework, shop, and handle money. She was also able to work as a homemaker, cashier, and sales attendant. Medical evidence has demonstrated that there has been no change in her medical condition to warrant a change in functioning. Therefore, the ALJ concluded that these results are not consistent with finding a disability.

In regards to step five, a vocational expert, found that Plaintiff would be unable to perform past work, but considering her age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform. The Plaintiff is 28-years old with a high school education. The vocational expert found that the Plaintiff would be able to perform such jobs as a microfilm mounter, weigher, and sealing machine operator. The vocational expert further testified that there are approximately 1,200 jobs available in the regional economy and approximately 45,000 of these jobs in the

national economy. The ALJ therefore found that Plaintiff is not disabled, and is capable of making a successful adjustment into the work force.

## V. REVIEW OF THE COMMISSIONER'S DECISION

Plaintiff contends that the ALJ's findings lack substantial evidence because: (A) the Commissioner erred by failing to consider all of Ms. Crawford's severe impairments; (B) the Commissioner erred by failing to properly consider the opinion evidence of record; (C) further consideration of medical listing 12.05 is warranted; (D) further consideration of Ms. Crawford's residual functional capacity is warranted; and (E) further consideration of Ms. Crawford's credibility is warranted.

## A. The Commissioner Erred by Failing to Consider all of Ms. Crawford's Severe Impairments

Plaintiff argues that the ALJ erred in her step two finding by failing to evaluate all of her severe impairments. Specifically, Plaintiff maintains that the ALJ failed to properly consider the diagnoses of dissociative identity disorder, depression, obsessive compulsive disorder, and anxiety. The step two inquiry is merely a "*de minimis* screening device to dispose of groundless claims;" once a claimant is found to have any severe impairment, the analysis continues on to step three. *Newell v. Comm'r of Soc. Sec.*, 346 F.3d 541, 546 (3d Cir. 2003). At step two, when an ALJ finds in a claimant's favor, "even if he . . . erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (also providing that "diagnoses alone are insufficient to establish" severity at step two); *see also Ross v. Astrue*, No. 08-5282 (SDW), 2010 WL 777398 (D.N.J. March 8, 2010) (holding that "where the Commissioner finds that the claimant suffers from even one severe impairment, any failure . . . to identify other conditions as being severe does not compromise the integrity of the analysis") (citing *Salles* and *Rivera v.*

8

*Comm'r of Soc. Sec.*, 164 F. App'x. 260, 261 n. 2 (3d Cir.2006)). In the instant case, the ALJ continued past step two. Therefore, even if Plaintiff were correct in asserting that the ALJ erred by not explicitly finding several diagnosed impairments severe, any such error was harmless.

**B. The Commissioner Erred by Failing to Properly Consider the Opinion Evidence of Record**

Dr. Robert Starace, a state agency medical consultant, provided an opinion on December 9, 2009, stating that Plaintiff's medical evidence of record supported the conclusion that Plaintiff could understand, remember and execute simple, routine instructions, could sustain concentration, persistence, and pace, could interact adequately, and could adapt to changes. State agency medical consultants are highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Act, and their opinions constitute expert opinion evidence which can be given weight if supported by medical evidence of the record, as in this matter. *See* 20 C.F.R. §§ 404.1527(f)(2); 416.927(f)(2); SSR 96-6p; *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In light of Dr. Starace's findings, the ALJ properly afforded little weight to Dr. Ostella's opinion from March 7, 2011. Dr. Ostella believed that Plaintiff did not "see the world clearly," had imaginary friends, heard voices in her head, had a depressed mood, and had suicidal ideation. He believed she had marked limitations understanding and memory. He checked boxes for generally moderate to marked limitations in sustained concentration and persistence, social interaction, and adaptation. Dr. Ostella opined that Plaintiff was incapable of even low stress work. He noted that he began seeing Plaintiff in December 2010. He assessed a GAF score of 52. Dr. Ostella's progress notes do not indicate the same degree of limitations. Dr. Ostella noted fair insight and judgment and intact memory and concentration when Plaintiff visited him on May 25, 2011.

9

Plaintiff claims both that a weight was not assigned and that the weight given was not appropriate. However, any finding regarding disability is a decision reserved to the Commissioner. See Social Security Ruling (SSR) 96-5p; 20 C.F.R. § 416.927(e)(1)-(2). Moreover, controlling weight will not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. 20 C.F.R. § 416.927(d)(2); SSR 96-2p. In this case, Dr. Ostella's opinion is not well-supported and is inconsistent with other substantial evidence of record.

Plaintiff specifically contends that the ALJ based the weight given on one-day of a "long and uninterrupted treatment history;" however, the May 25, 2011, progress notes are the only progress notes from Dr. Ostella in the record. The notes that Plaintiff refers to in her brief that indicate Plaintiff had auditory hallucinations and poor concentration, while relevant evidence, are not notes from Dr. Ostella but rather from Ms. Ronni Murray, Licensed Clinical Social Worker, which Dr. Ostella reviewed several days after the appointment in December 2010. Additionally, even at this December 2010 evaluation Plaintiff was fully oriented, had fair judgment, and had goal-directed thought processes. Dr. Starace's opinion, as discussed above, was not consistent with Dr. Ostella's opinion. Dr. Starace noted that Plaintiff was working 20 hours per week and able to care for her daughter. The evidence of record is not consistent with the opinion of Dr. Ostella; therefore, the ALJ appropriately assigned the opinion little weight.

The ALJ also correctly assigned no weight to the opinion of Ms. Murray. Plaintiff argues that Ms. Murray should have been assigned more, if not controlling, weight. At the outset, the Commissioner notes that Ms. Murray was not an acceptable medical source. 20 C.F.R. § 416.913(a). Therefore, her opinion was not entitled to the deference (i.e., up to controlling

weight) that is provided to the opinions of acceptable sources including treating physicians. See Social Security Ruling (SSR) 06-03p. Ms. Murray provided a letter on November 30, 2011, that Plaintiff attended outpatient therapy with her since December 2010. She stated that Plaintiff had dissociative episodes, had severe memory problems, and slept and ate sporadically. She said Plaintiff was fearful and relatively homebound. Ms. Murray believed that Plaintiff's memory lapses and dissociative disorder prevented any type of work or consistency in job skills. As the ALJ discussed, the opinion regarding job skills and work is on an issue reserved to the Commissioner, and, therefore, can never be given significant weight. See 20 C.F.R. § 416.927(e)(2); SSR 96-5p;.

Furthermore, Ms. Murray's letter made conclusory statements that were not supported by other evidence of record. The only records provided by Ms. Murray are from Plaintiff's initial intake assessment from December 2010. On mental status assessment, this evaluation indicated that Plaintiff was fully oriented, had fair judgment, and had goal-directed thought processes. While it does note poor concentration, it does not indicate memory problems. Additionally, the other medical evidence of record does not support the conclusory statements in Ms. Murray's letter. For instance, Dr. Ostella noted fair insight and judgment and intact memory and concentration when Plaintiff visited him on May 25, 2011. The evidence of record does not support, and is inconsistent with, Ms. Murray's opinion. Thus, the ALJ appropriately assigned it no weight. See SSR 06-03p.

Plaintiff argues that the ALJ erred by failing to explain why plaintiff can perform full-time work despite having found, as part of the "psychiatric review technique," that Plaintiff had moderate limitations in the area of concentration, persistence, and pace. This argument, too, is unfounded. The Commissioner's regulations provide for a specific procedure for the evaluation

of mental impairments when assessing whether a claimant has a medically determinable mental impairment, whether the impairment is severe, and whether the impairment satisfies the Listings. See 20 C.F.R. §§ 416.920a(b)(1), (d)(1)-(2). The procedure, known as the psychiatric review technique ("PRT"), involves a rating of the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See id. § 416.920a(c)(3). The ALJ found that Plaintiff had mild difficulties in activities of daily living and social functioning. She found moderate difficulties in concentration, persistence, and pace. Plaintiff had no episodes of decompensation. Accordingly, the ALJ afforded the appropriate weight to the opinions that were and were not consistent with the objective evidence.

**C. Further Consideration of Medical Listing 12.05 is Warranted**

Plaintiff argues that the ALJ did not appropriately consider the criteria of subsection C of Listing 12.05 (Mental Retardation). This is simply not true. The ALJ, in determining that Plaintiff's impairments did not meet or medically equal a Listed Impairment, specifically considered Listing 12.05, including the introductory threshold paragraph along with subsections A through D. Additionally, Plaintiff had the burden of proof at step three, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987), and failed to meet her burden. For her to meet her burden, she was required to demonstrate how her impairment(s) met all of the specified criteria, which she failed to do. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

**D. Further Consideration of Ms. Crawford's Residual Functional Capacity is Warranted**

Plaintiff also claims the ALJ's Residual Functional Capacity finding was not supported by substantial evidence. The record demonstrates that the ALJ determined that Plaintiff retained the

ability to perform the exertional demands of work at all levels but that Plaintiff was limited to jobs which were unskilled and repetitive, low stress, required no work in close proximity (closer than 3-5 feet) to others to avoid distraction, and that require only occasional contact with supervisors and co-workers with no contact with the general public.  The ALJ defined low stress jobs in the opinion as requiring: 1) only an occasional change in the work setting during the work day; 2) only an occasional change in decision-making required during the work day; and 3) if production based, production is monitored at the end of the day rather than consistently throughout it.  The ALJ considered all of Plaintiff's symptoms and determined that the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929; Social Security Rulings (SSRs) 96-4p, 96-7p.

  The medical evidence supports the ALJ's decision.  The ALJ's findings on mental status examination are consistent with the RFC determination.  By way of example, Plaintiff presented with grossly intact judgment, insight, and memory at the New Jersey Family Practice Center on June 26, 2009.  She was appropriately oriented to person, place, and date.  At her consultative examination on November 22, 2009, Dr. Paul F. Fulford, noted that Plaintiff was appropriately oriented and cooperative.  He said her central control was good.  Plaintiff recited the alphabet out loud and counted backwards from 20 without error.  Plaintiff presented with clear and goal-directed speech.  Plaintiff's judgment appeared adequate and her abstract thinking was good.  Plaintiff retained the ability to spell the word "world" both forwards and backwards and could add the numbers four and five.  Dr. Fulford assessed a Global Assessment of Functioning (GAF) score of 65, indicative of only mild restrictions, and diagnosed only mild mental retardation.  Additionally, a progress note from May 25, 2011, from Dr. Frank Ostella, Plaintiff's treating

psychiatrist, indicated that Plaintiff had goal-directed thoughts, good behavior, appropriate affect, fair, insight, fair judgment. He also noted intact short memory, long memory, and concentration. Thus, the medical evidence supports the RFC.

### E. Further Consideration of Ms. Crawford's Credibility is Warranted

The ALJ properly considered Plaintiff's statements regarding her impairments and the credibility of such statements. An ALJ may find that a claimant's impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements pertaining to the intensity, persistence, and limiting effects of her symptoms are not entirely credible. In this case, the ALJ properly considered Plaintiff's testimony and statements regarding her limitations in accordance with the Commissioner's regulations, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that she alleged total disability.

Additionally, the Commissioner was not obligated to accept Plaintiff's testimony about her complaints and restrictions without question, and had the discretion to evaluate Plaintiff's credibility in light of the evidence in the record. A court must uphold the Commissioner's decision to discount a claimant's complaints of pain and other subjective complaints if the finding is supported by substantial evidence. See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). In this case, Plaintiff's activities of daily living belied her claim of disability. Plaintiff testified at her hearing, that she could clean, cook, do laundry, grocery shop, and take public transportation. Plaintiff lived alone with her 11 year old daughter. In her function report, Plaintiff said she was able to pay bills and count change. She went outside daily. She reported spending time with others by going to the movies or out to eat. She claimed she did not need

reminders to do things. The ALJ noted that Plaintiff also filed an income tax return for a year in which she testified she did not work. Additionally, Plaintiff's friend, Eric Gulley, filled out a Third Party Function Report and indicated that Plaintiff was working. Plaintiff even reported to the consultative examiner that she worked 20 hours per week. Accordingly, there was substantial evidence in the record for the ALJ to afford less weight to Plaintiff's credibility.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that there is substantial evidence in the record to support the Commissioner's final decision that Plaintiff is not disabled. Accordingly, the Commissioner's determination is affirmed. An appropriate Order follows.


                                                       **/s/ Faith S. Hochberg**
                                                       **Hon. Faith S. Hochberg, U.S.D.J.**